## JOHN DAVENPORT v. HOLMES E. SADLER.

1. TAX DEED TO COUNTY—*Successive Grantees.* In an action of eject-
ment for the recovery of certain real estate, *held,* that chapter 39 of
the Laws of 1877 is valid, and that all the proceedings had under it in
connection with the property in controversy were sufficiently regular
to render them valid; but as the sheriff's deed which was executed to
the county may never have been delivered, and as it certainly was not
recorded until after all the rights of both parties to the action had
accrued, *held,* that the county obtained only an equitable interest in
the property, and that the holders of the patent title at all times held
the legal title thereto, but that the county held an interest which it
might transfer at any time by any proper proceedings, and that an
order of the county board permitting the holders of the patent title
to redeem the land from the original tax sale and the various taxes
included in the original judicial proceedings had under said chapter
39, by simply paying a certain tax, would transfer such interest, and
that, after such redemption by such order and payment, the county
would no longer have any interest in the property to transfer to any
other person.

2. EJECTMENT—*Possession—Payment of Taxes.* Subsequently another
person who had no interest in the property procured a quitclaim deed
therefor from the county by paying a small consideration therefor,
and also paid the taxes on the property for two years, which taxes
were legal and valid liens thereon. *Held,* That such person procured
no title to the property, but that, as he was the defendant in the ac-
tion of ejectment, the possession of the property will not be awarded
to the plaintiff, who is the holder of the patent title and the holder
of the interest first transferred by the county, until such plaintiff shall
pay or tender to the defendant the taxes with interest which were paid
by him.

*Error from Butler District Court.*

THE material facts are stated in the opinion.

*J. W. Deford,* and *Hamilton & Cubbison,* for plaintiff in
error.

*Gillett & Sadler,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of eject-
ment, brought in the district court of Butler county on Septem-

ber 24, 1888, by John Davenport against Holmes E. Sadler, for the recovery of section 24, in township 24, range 7, in said county. The case was tried on December 27, 1888, before the court without a jury, and on February 22, 1889, the court rendered its decision and judgment making special findings of fact and law, and rendering judgment in favor of the defendant and against the plaintiff; and the plaintiff, as plaintiff in error, brings the case to this court for review. The findings of fact and law made by the court below, so far as it is necessary to state them, read as follows:

"FINDINGS OF FACT.

"1. The plaintiff's title to the premises in controversy, to wit, section 24, township 24, range 7, Butler county, Kansas, consists of, as follows, viz.: (a) Patents from the United States to J. E. McClun, dated 1868; (b) a quitclaim deed from J. E. McClun and wife to John Nichols, dated June 6, 1868, recorded December 13, 1869; (c) a deed from John Nichols and wife to David M. Bunn, dated March 15, 1869, recorded May 12, 1870; (d) a warranty deed from David M. Bunn and wife to Joseph A. Towle, dated June 2, 1880, recorded October 28, 1881; (e) a warranty deed from Joseph A. Towle and wife to John Davenport, the plaintiff, dated May 2, 1882, recorded May 5, 1882.

"2. The defendant's title to said premises is based on conveyances and proceedings as follows: (a) A sheriff's deed, which is in words and figures following, to wit. [Here follows the above-mentioned sheriff's deed copied in full. It was executed by the sheriff of Butler county on April 26, 1880, conveying the property in controversy among other property to Butler county, and was recorded on January 9, 1888. It seems to be sufficient in form, and the questions presented concerning it we shall mention and discuss hereafter.] (b) A contract of sale in writing, embraced in the following petition and order, to wit:

"'To the Honorable Board of County Commissioners of Butler County, Kansas:

"'GENTLEMEN—I desire to purchase section 24, township 24 south, of range 7 east of 6th principal meridian, and also southwest quarter of section 8, township 23 south, of range 8 east of 6th principal meridian, which were sold by the sheriff of Butler county to said county for delinquent taxes, and proceedings had under chapter 39 of the Laws of 1877, and I hereby offer to pay to said county for the same the sum of

$50, and the taxes for 1878 and 1879 on said section 24, township 24, range 7, amounting to $158.68, making in all the sum of $208.68.

Respectfully submitted,        HOLMES E. SADLER.'

"'Commissioners' Journal D, April term, 1887, Butler county, Kansas.
"'STATE OF KANSAS, COUNTY OF BUTLER.    COUNTY CLERK'S OFFICE.
"'EL DORADO, KANSAS, Monday, April 11, 1887.

"'The board of county commissioners, Butler county, Kansas, met in regular session as required by law.

"'Present: T. R. Purcell, chairman; J. K. Skinner and A. Kuster, commissioners; E. H. Hutchings, county attorney; and James Fisher, county clerk.

"'FRIDAY MORNING, April 15, 1887.

"'Board met.    Members all present.

"'In the matter of the application of Holmes E. Sadler, to purchase section 24, township 24, range 7 east, and the southwest quarter of section 8, township 23, range 8, Butler county, Kansas.

"'And now comes Holmes E. Sadler and makes application to purchase section 24, township 24, range 7 east, and the southwest quarter of section 8, township 23, range 8, which were sold by the sheriff of Butler county for delinquent taxes, in proceedings had under chapter 39 in the Laws of 1877, and offers to pay to said Butler county for the same the sum of $50, and the taxes of the years 1878 and 1879 of said section 24, township 24, range 7, amounting to $158.68, making in all the sum of $208.68.    The board grants said application, and orders the chairman of the board to execute and deliver to said Holmes E. Sadler a quitclaim deed to said described land, upon the payment to the county treasurer of said sum of $208.68.                    T. R. PURCELL,

Chairman Board of County Commissioners.'

"(c) A quitclaim deed from Butler county, Kansas, by the chairman of its board of county commissioners, to Holmes E. Sadler, dated April 18, 1887; and recorded April 23, 1887.

"3. As to the proceedings upon which the sheriff's deed set out in finding No. 2 is based, neither the petition nor the notice of the pendency of such suit which was published gave the name of any person as owner of said land or any part thereof, but all of said proceedings were otherwise regular and sufficient.    At the time such proceedings were instituted, David M. Bunn appeared from the records in the office of the register of deeds in said county to be the owner of said land, but the county attorney who brought the suit had no actual knowledge or information as to the ownership thereof.

"4. In rendering the judgment on which the sheriff's deed aforesaid is based, the court made among others the following findings: 'That all and singly the allegations contained in said petition for the sale of said lands were true, and that the owner of said land was unknown, and that the land was delinquent for the years 1870 to 1877 inclusive.'

"5. David M. Bunn has resided in Franklin county, Kansas, continuously since 1875.

"6. The deed from David M. Bunn and wife to Joseph A.

Towle, referred to in finding No. 1, purports to be a full covenant warranty deed for a consideration of $4,000, but by a collateral agreement between the parties, all claims arising out of taxes were excepted from such covenants, and the actual consideration agreed to be paid for said deed was $125, and the said Joseph A. Towle took the title as trustee for himself and one H. H. Murray, who were equal partners in the purchase.

"7. Said H. H. Murray thereupon employed one Hamilton as attorney to perfect the title of said land, and on June 6, 1881, said attorney filed with the clerk of said county a petition in writing which has been lost, and for many years has not been seen, and which was substantially as follows: It was addressed to the board of county commissioners of Butler county, Kansas, and it stated first, that D. M. Bunn was the owner of the land, section 24, township 24, range 7 east, in Butler county, Kansas, and that it had been sold for taxes in the year 1871, for the taxes of 1870, and that certain other taxes for other years had been carried back to that tax sale, naming all the years that no taxes had been paid; and asked the right to redeem the said land from the tax sales on payment of the taxes of 1880, and was signed by said attorney, as attorney for D. M. Bunn.   Upon the back of said petition was indorsed an order substantially as follows: 'The within petition is granted, and the treasurer of Butler county, Kansas, is authorized to issue a redemption certificate for the lands described in this petition, on payment to him by D. M. Bunn of all taxes of 1880.   By order of the board: A. T. HAVENS, chairman.'

"The following record of the transaction aforesaid was thereupon entered in the journal kept by the county clerk of said county, (Journal C, pages 274 and 275,) which reads as follows:

"'Commissioners' journal.   June 6, 1881.   County clerk's office, June 6, 1881.   State of Kansas, Butler county, ss.

"'The board of county commissioners met as a board of equalization as required by law.   Present: A. T. Havens, chairman; M. Guinty, H. N. Pierce, L. Knowles, county attorney, and C. P. Strong, clerk.

"'JUNE 7, 1881.— Commissioners met as per adjournment.   Members all present.

"'JUNE 8, 1881.— Commissioners met as per adjournment.   Members all present.   Application of D. M. Bunn for leave to redeem certain land from an old tax sale granted; but no redemption certificate to issue until taxes for the year 1880 are paid.

"'No further business appearing, the board adjourned.

A. T. HAVENS, *Chairman.'*

"8. The attorney aforesaid was the same person who, as county attorney, had instituted and prosecuted to judgment the suit on which the sheriff's deed aforesaid is based, but his term of office had expired in January, 1879.

"9. Said attorney thereupon went to the treasurer of said county and paid the taxes for 1880 on said land, amounting to $71.60, and took a tax receipt therefor, and the said treasurer thereupon made an entry in the sales book for the year 1871, opposite the entry of the original sale of said land for taxes, as follows:

"'On petition of D. M. Bunn, by order of the board of county commissioners, this sale order redeemed, on payment of the taxes for the year 1880.'

"And at the same time said treasurer signed a certificate which was printed on the back of an abstract of title to said land, which was presented to him by said attorney, and which was substantially in the following form:

"'STATE OF KANSAS, COUNTY OF BUTLER, ss.

"'I, the undersigned, treasurer in and for said county, do hereby certify that there are no unpaid taxes or assessments of any kind on the tax-rolls in this office on the real estate, section 24, township 24, range 7 east.

"'Witness my hand, this 21st day of June, 1881.'

"10. The construction placed by said attorney upon the action of the board aforesaid was, that upon the payment of the taxes of 1880 all back taxes, from 1870 to 1879 inclusive, were by the board to be canceled and abated.

"11. No certificate of redemption, receipts or writing relating to said transaction other than as above set forth was ever signed or issued by any officer of said county, and no other entry or notation in reference thereto was ever made on any records of said county, nor has any other or further sum at any time been paid into the treasury of said county on account of said land by said plaintiff, or those under whom he claims, except the plaintiff has paid the taxes thereon for the years 1881 to 1887 inclusive as the same accrued.

"12. Upon the back of the abstract aforesaid was printed a certificate in the following form, which, at the solicitation of said attorney, was signed by the clerk of the district court of said county after he had erased the words placed in brackets:

"'*Statement of Judgments, Mechanics' and Other Liens.*

"'STATE OF KANSAS, COUNTY OF BUTLER, ss.

"'I, the undersigned, clerk of the district court, Butler county, Kansas, do hereby certify that there are no judgments, mechanics' liens or foreign executions on file or of record in this office, or any attachments or any suits pending in said county, [against said within-de-

scribed lands nor] against any grantors or grantees herein, [nor against any other person through whom title herein is derived except] to wit: J. E. McClun, John Nichols, David M. Bunn, Joseph A. Towle.
"'Witness my hand and seal, this 21st day of June, A. D. 1881.'

"13. The plaintiff bought said land of said Joseph A. Towle relying upon the said abstract and the certificate thereon; he, however, first wrote to said attorney asking an explanation of the erasures in the certificate of said clerk thereon, and was answered that latterly the said clerk had declined to sign such certificates upon the back of any abstract without first erasing said words.

"14. The defendant purchased said land of said county without actual knowledge or notice of any of the matters set forth in findings Nos. 3 to 13 above inclusive, and without any constructive notice thereof, except as he was charged with notice by reason of the existence of the words above set forth.

"15. And the court further finds, that there was no evidence offered on said trial as to whether or not the sheriff's deed aforesaid which was produced by defendant was ever delivered to said Butler county, Kansas, or to any of the officers or agents of said county, and that neither the chairman of the board of county commissioners nor county treasurer or county attorney of said county for the year 1881 had any knowledge of the execution of said deed by said sheriff to said county at any time during the year 1881."

"CONCLUSION OF LAW.

"The defendant ought to recover."

The facts, stated briefly and in chronological order, are substantially as follows: On June 6, 1867, John E. McClun purchased the land in controversy from the United States. On June 8, 1868, McClun and wife executed a quitclaim deed for. the land to John Nichols. On March 15, Nichols and wife executed a warranty deed for the land to David M. Bunn. On May 15, 1869, patents were issued for the land from the United States to McClun. On December 13, 1869, the deed from McClun and wife to Nichols was recorded. On May 12, 1870, the deed from Nichols and wife to Bunn was recorded. Taxes were levied upon the land for the year 1870 and annually thereafter, and were paid only as hereafter stated. On May 1, 1877, chapter 39 of the laws of that year for the collection of delinquent taxes took effect. On April 5, 1878, the county

attorney of Butler county commenced an action under that
chapter to collect the taxes on the land for the years 1870 up
to 1877, inclusive, none of such taxes having been paid at that
time, and indeed have never been paid except as hereafter
stated.   On September 27, 1878, judgment was rendered in
such action by default.   On March 18, 1879, said chapter 39
of the Laws of 1877 was repealed by chapter 42 of the Laws
of 1879, but with proper saving clauses.  On October 21,
1879, an order of sale was issued on such judgment, and on
December 2, 1879, the land was sold on such order of sale to
Butler county, for at least two-thirds of its appraised value,
amounting to $1,373.83.   At the March term of the court in
1880, such sale was confirmed and a sheriff's deed was or-
dered.   On April 26, 1880, the sheriff's deed for the land was
executed to Butler county.   On June 2, 1880, Bunn and wife
executed a warranty deed to Joseph A. Towle.   On July 8,
1881, as the record shows, but in all probability on June 8,
1881, an application was made by Hamilton, in the name of
Bunn, but as an attorney and agent representing all the par-
ties interested in the patent title, to the county board of Butler
county to redeem the lands from the tax sale of 1871 and the
taxes of 1870 and other years, by paying to the county treas-
urer the taxes for the year 1880; and the board granted the
application, and such attorney paid the taxes for the year 1880,
amounting to $71.60.   On June 21, 1881, the county treas-
urer certified that there were no taxes or assessments due
against the land in controversy and this certificate was given
to such attorney.   On October 20, 1881, the deed from Bunn
and wife to Towle was recorded.   On May 2, 1882, Towle
and wife executed a warranty deed for the land to John Dav-
enport, the plaintiff in this action, the aforesaid treasurer's
certificate having been shown to him.   The consideration ex-
pressed in the deed was $1,650, and this seems to have been
the real consideration aside from the taxes of 1881, which were
then due, and amounting to $73.77, which Davenport paid.
This deed was recorded on May 5, 1882.   Davenport after-
ward paid all the taxes on the land for the years 1882 up to

1887, inclusive. On April 18, 1887, Butler county executed a quitclaim deed for the land to Holmes E. Sadler, the defendant in this action, the consideration being $50 and taxes on the land for the years 1878 and 1879, $158.68; total, $208.68. This deed was recorded on April 23, 1887. On January 9, 1888, the sheriff's deed to Butler county was recorded. The defendant, Sadler, took possession of the land in March, 1888. On September 24, 1888, this action was commenced by Davenport against Sadler in Butler county for the recovery of the land.

We shall decide this case upon the theory that chapter 39 of the Laws of 1877 is valid, and that all the proceedings had under it in connection with the property in controversy in the district court of Butler county, including the judgment, the sale of the property, and the confirmation of such sale, were all sufficiently regular to render them valid. A sheriff's deed was also executed as a part of such proceedings, and we shall decide this case upon the theory that it also would have been valid if it had been delivered and recorded; but as it may never have been delivered, and as it certainly was not recorded until after all the rights of both parties to this action had accrued, we shall decide the case upon the theory that it did not convey the legal title to the property, and that the holders of the patent title at all times held and continue to hold the legal title. (Conveyance Act, §§ 19, 20, 21.) But we shall also decide the case upon the theory that by such judicial proceedings the county of Butler obtained an equitable interest in the property which it could legally have transferred to other parties, whether such other parties held the patent title or any other title, or no title; and then upon these theories which party, at the present time, holds the paramount interest and estate in the property in controversy — the plaintiff, Davenport, or the defendant, Sadler? In our opinion Davenport does. Whatever interest the county of Butler had in the property after such judicial proceedings, and during the months of June and July, 1881, it transferred to the holders of the patent title by the order of the

county board authorizing and permitting such holders to re-
deem the property from the tax sale of 1871, and from the
taxes of 1870 and other taxes, by simply paying the taxes
for the year 1880. The county could have transferred its in-
terest in the property by executing a quitclaim deed thereto,
such as it executed to Sadler.

In other words, we are of the opinion that by such order
of the county board in 1881, and by the payment by the
holders of the patent title of the taxes for the year 1880, and
the payment by Davenport of the subsequent taxes up to and
including the year 1887, he procured all the interest which
the county had in the land in or prior to the year 1881, or
which it ever possessed under the aforesaid judicial proceed-
ings. This therefore left nothing in the county for it to
transfer to Sadler when it executed its quitclaim deed to him
on April 18, 1887; and Sadler of course obtained no title or
estate in the property in controversy by such quitclaim deed.
Davenport's equities are also greater than Sadler's. Daven-
port holds the original patent title and has paid for his in-
terest in the property $1,650, and seven years' taxes, while
Sadler has no title, and for his supposed interest in the prop-
erty has paid only $50, and two years' taxes; and when Sad-
ler purchased his supposed interest he must have known that
Davenport or some one else had regularly paid the taxes on
the property from the year 1880 up to the time of his pur-
chase in 1887. Sadler, however, we would think, has a right
to have the taxes paid by him refunded. The county, at the
time of the transaction between it and the holders of the pat-
ent title or at any other time, had no power to transfer, in
the manner in which it did transfer its interest in the prop-
erty to the holders of the patent title, more than the interest
which it obtained under the judicial proceedings aforesaid.
It had no power, when it permitted the holders of the patent
title to redeem the property from the tax sale of 1871 and the
subsequent taxes, to cancel, annul or abate any of the taxes
for the years 1878 and 1879, for these taxes were still valid,
outstanding taxes and liens upon the land, which could not

have been included in the aforesaid judicial proceedings; for the judgment in such proceedings was rendered on September 27, 1878, before either of these taxes had become due. These taxes then for the years 1878 and 1879 were still valid taxes against the land when Sadler procured his supposed title by obtaining his quitclaim deed from Butler county, and he paid these taxes because of his supposed interest in the property which he procured by such quitclaim deed, and to the extent of these taxes we think Sadler should be reimbursed. In justice and equity, the holders of the patent title should pay these taxes. They were under obligations to pay them when Sadler paid them, and he paid them because of a mistake in his legal rights and because he supposed he had procured a title to the property; and now, in analogy with many decisions of this court in actions in the nature of ejectment and in equitable actions, we shall hold that, before Davenport is put into the possession of the property or before any writ of restitution for the possession thereof shall be issued, he shall pay or tender to Sadler the amount of the taxes paid by Sadler for the years 1878 and 1879, with interest at the ordinary legal rate from the time when Sadler paid the same up to the time of the payment or tender to be made by Davenport. With the views heretofore expressed in this case, it is not necessary to decide any of the other questions presented by counsel.

The judgment of the court below will be reversed, and the cause remanded, with the order that judgment be rendered in favor of Davenport and against Sadler, in accordance with the opinions of this court herein expressed.

All the Justices concurring.